**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID L. WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:09-cv-00960-TFM** |
| **MICHAEL J. ASTURE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM  OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401x et seq., David A. Walker, ("Walker" or "Plaintiff") requested and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. §636(c), and for reasons herein explained, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.        NATURE OF THE CASE

Walker seeks judicial review of the Commissioner's decision denying his request for disability insurance benefits. This court may conduct limited review of such a decision to determine whether it complies with applicable law and is supported by substantial evidence. 42 U.S.C. § 405 (2006).  The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits in narrowly circumscribed. The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The court "may not decided the facts anew, reweigh the evidence, or substitute [its] judgment of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating that the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis*, 125 F.3d at 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); Foot, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 42 U.S. at 401, 91 S. Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); see also *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dept. of Health and Human Svcs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1996).

### III.     BACKGROUND AND PROCEEDINGS

Walker first filed a claim for social security disability benefits on July 31, 2002, alleging that the period of disability began on July 1, 1998. (Tr. 186). The claim was denied initially and Walker filed a timely request for a hearing. On June 21, 2006, Harris requested a hearing before an administrative law judge ("ALJ"). (Tr. 71). On May 5, 2004, Attorney Norma Hilboldt represented Walker at the hearing before ALJ David Murchison. (Tr. 557). The ALJ heard testimony from Walker (Tr. 560-79; 583-85) and a vocational expert, Rick Freeman (Tr. 579-83). On August 5, 2004, the ALJ ruled against Walker. (Tr. 66-79). Walker sought administrative review of the decision on September

14, 2004. (Tr. 61-62). Walker filed a subsequent claim for social security disability insurance on October 11, 2005. On September 8, 2006, the Social Security Administration's Appeals Council remanded Walker's case to the ALJ and ordered the ALJ to consolidate Walker's cases. (Tr. 45-47). On March 15, 2007, a second hearing was held before the same ALJ. (Tr. 593-616). Attorney Norma Hilboldt represented Walker. (Tr. 593). Again, Walker testified before the ALJ. (Tr. 598-12). The ALJ heard testimony from a vocational expert, Sue Berthaum. (Tr. 613-15). On April 27, 2007, the ALJ again found the claimant not disabled under section 1614(a)(3)(A) of the Social Security Act. Walker again appealed his case to the Appeals Council on May 15, 2007. (Tr. 13). The Appeals Council affirmed the second decision of the ALJ on August 13, 2009. Walker subsequently filed his case in this Court on October 15, 2009. *See* Doc. 1, Complaint.

## IV.    ADMINISTRATIVE DECISION

### A. Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520, 416.920 (2005); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *Id*. This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yucker*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 91987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step Four. *See Phillips*, 357 F.3d at 1237-39.  As such, the claimant bears the burden of proving the following: (1) whether she is currently performing substantial gainful activity; (2) whether she has a severe impairment; (3) whether that severe impairment meets or exceeds an impairment described in the listings; and (4) whether she can perform her past relevant work. *Id*. A *prima facie* case of qualifying disability exists when a claimant carries the Step One through Step Four burden. Only at Step Five does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). *Id*. at 1238-39. RFC represents the claimant's abilities despite her impairments, and is based on all relevant medical and other evidence. *Id*. Moreover, it can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform, *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.  Otherwise, the ALJ may use a vocational expert. *Id.*  A vocational expert is an expert on the kinds of jobs an

individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

**B. Findings and Conclusions**

Applying the five-step analysis, the ALJ first found that Walker has not engaged in substantial gainful activity since July 31, 2002. (Tr. 20). At Step Two of his decision, the ALJ found the following severe impairments to Walker's health: "alcohol dependence; personality disorder; borderline intellectual functioning; hypertension; seizure disorder; pancreatitis; left eye blindness; and duodenal ulcers." (Tr. 12). At Step Three, the ALJ found that, the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings. (Tr. 25).

At Step Four, the ALJ determined that if Walker stopped the substance use, he would be unable to perform past relevant work. (Tr. 26). At Step Five, the ALJ reviewed the entire record including Walker's symptoms and the opinion of the vocational expert. (Tr. 26-27). The ALJ concluded that, on the basis of the entire record, Walker can make "a successful adjustment to other work." (Tr. 26).

The ALJ concluded that, considering Walker's residual functioning capacity, age, education, and work experience and the testimony of the vocational expert, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 27). Specifically, the ALJ found that, if Walker stopped the substance use, Walker had the RFC to perform the full range of medium

work. (Tr. 27).  Furthermore, the ALJ heard testimony from a vocational expert to determine the "extent of erosion of the unskilled medium occupational base caused by the limitations that would remain." (Tr. 27).  The vocational expert testified that given Walker's limitations that, if Walker stopped substance use, then a significant number of jobs existed in the national economy for an individual with Walker's age, education, work experience, and RFC. In summary, the ALJ concluded that the claimant was not disabled since July 31, 2002. (Tr. 24).

## V.    ISSUES

Walker raises two issues on appeal:

(1)    Whether the ALJ erred by not discussing Walker's ability to perform specific work-related functions on a function-by-function basis, and not incorporating Walker's moderate limitation in concentration, persistence, and pace when finding Walker capable of medium exertion work at the unskilled level?

(2)    Whether the ALJ's finding that Walker's alcoholism contributed to Walker's disability is supported by substantial evidence when Walker claimed abstention from drinking alcohol beginning in 2005?

*See* Pl. Br. at 1.

## VI.    DISCUSSION AND ANALYSIS

### A.    ALJ erred in finding that Walker had the RFC to perform a full range of medium work

First, Walker contends that the ALJ failed to incorporate detailed findings as to the work-related limitations attributable to Mr. Walker's moderate limitations in

maintaining concentration, persistence, and pace.  (*See* Pl. Br. at 7).  Walker further

contends that the ALJ failed to consider "an expanded list of work-related capacities,

including the ability to understand, carry out, and remember instructions, and to respond

appropriately to supervision, coworkers, and customary work pressures in a work setting"

pursuant to SSR 96-8p  (Pl. Br. at 7).  Next, Walker contends that the ALJ failed to make

"specific findings as to whether Mr. Walker was limited to one-two step tasks, detailed

tasks, complex tasks, and never issued an opinion about how long he could concentrate or

any of the other types of findings generally made when an ALJ concludes that a claimant

suffers from moderate concentration limitations." (Pl. Br. at 9).  Finally, Walker contends

that the ALJ failed to incorporate moderate concentration limitations in the hypothetical

question other than by limiting Walker to unskilled work.  (Pl. Br. 9).  Walker argues that

these findings create reversible error by the ALJ. (Pl. Br. 12).

   The Commissioner responds that SSR 96-8p "only requires *consideration* of all

factors, not *enumeration* of all factors."  (Df. Br. at 9)  (citing *Banks v. Astrue*, 537 F.

Supp. 2d 75, 84 (D.C. Cir. 2008) (emphasis in original).  The Commissioner adds that the

ALJ "properly articulated the residual functional capacity determination as the decision

demonstrates he adequately considered all of the evidence."  (Df. Br. at 9).  Finally, the

Commission responds that Walker points to no evidence "overlooked" by the ALJ and

that the ALJ's hypothetical was adequate because it tracked the RFC determination (Df.

Br. at 9-11).

   The Social Security Administration outlines its policies and policy interpretation

regarding the assessment of the claimant's RFC ("Residual Functional Capacity") in SSR

("Social Security Ruling") 96-8p.  In pertinent part, its states as follows: "The RFC

assessment is a function-by-function assessment of an individual's ability to do work-related activities."  SSR 96-8p.  Walker contends that SSR 96-8p requires the ALJ to articulate his opinion as to Walker's moderate limitations in maintaining concentration, persistence, and pace.  As the Commissioner noted,  the ALJ's failure to "more specifically and explicitly set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence."  *Gully v. Astrue*, 2009 WL 1580416 (M.D. Ala. 2009) (citing *Freeman v. Barnhart*, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007).

In *Chavez v. Astrue*, the Ninth Circuit held that the ALJ met the requirements of SSR 96-8p because the ALJ considered and noted all of the relevant evidence bearing on the Chavez's abilities to perform work-related activities on a function-by-function basis. 276 Fed. Appx. 627, 627-28 (9th Cir. 2008).  *Id*.  Thus, as the Commissioner points out, the ALJ need not articulate his findings concerning a claimant's functional limitations and work-related abilities on a function-by-function basis so long as the decision demonstrates that the ALJ considered all of the relevant evidence.  The ALJ's findings regarding Walker's moderate limitations in concentration, persistence, and pace meet the requirement of SSR 96-8p because it is clear from ALJ's findings that he considered all available evidence as a whole.

Specifically, the ALJ considered the opinions and medical findings of Walker's physicians, including Dr. King and Dr. Woodfin.  (Tr. 21).  The ALJ gave significant weight to the opinion of Dr. Simpson, who found that Walker did not suffer from a disabling mental impairment in the absence of alcohol abuse.  (Tr. 20).  Furthermore, the

ALJ gave significant weight to Dr. O'Hearn's GAF of 60[1], which again presupposes no alcohol abuse.  (Tr. 20).  The ALJ considered Dr. Menyhert's opinion that Walker's adaptive functioning is not in the mentally retarded range.  (Tr. 20-21).  The record reflects that Walker performed poorly in a subsequent IQ test performed by Dr. Menyhert on April 11, 2005.  (Tr. 518.)  However, the ALJ explained that the second IQ test from Dr. Menyhert is not credible because it appeared that Walker gave poor effort and Walker had performed better on a past test.  (Tr. 25).  Furthermore, the ALJ considered Walker's daily activities to assess the effect of Walker's moderate limitation in maintaining concentration, persistence, and pace.  The ALJ, for example, points to Walkers wide-ranging activities that include "taking care of his personal needs without assistance, cooking, shopping, performing household chores, walking daily, and visiting friends." (Tr. 21).  Thus, it is clear from the record that the ALJ considered all available evidence in formulating his RFC assessment.  As a result, the Court finds that the ALJ complied with the requirements of SSR 96-8p although the ALJ did not articulate his detailed findings regarding Walker's work-related limitations attributable to his moderate limitations in maintaining concentration, persistence, and pace.

Next, Walker contends that the ALJ erred by failing to incorporate Walker's concentration limitations in the hypothetical posed to the Vocational Expert ("VE") other

---

[1]      The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships."  A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc.2000).  *Camarillo-Ngo v. Astrue*, 2010 WL 1257474 *8 FN 3 (M.D. Fla, March 29, 2010).

than limiting Walker to unskilled work and work that would require only occasional interaction with the general public.  (Pl. Br. at 9).  Walker contends that the ALJ had a duty to present a hypothetical to the VE that included Walker's "moderate limitation in maintaining concentration, persistence, and pace."  (Pl. Br. at 10).  Walker notes that it was "incumbent upon the ALJ to make a finding of fact and law as to the vocational impact" of "Mr. Walker's limitation in maintaining concentration, persistence, and pace," especially considering the limitation exists even in the absence alcohol use.  (Pl. Br. at 11-12).  Walker argues that this omission amounts to reversible error.  The Court agrees.

The Commissioner responds that the ALJ's unskilled work hypothetical is the equivalent of a hypothetical that includes a moderate limitation in maintaining concentration, persistence, and pace because by definition "unskilled work" represents "work that requires little or no judgment to do simple duties that can be learned on the job in a short period of time."  (Df. Br. at 10 (citing 20 C.F.R. § 416.968)).  The Commissioner further contends that the ALJ's hypothetical is adequate because the RFC accounted for Walker's deficiencies in maintaining concentration, persistence, and pace, and the ALJ hypothetical mirrored the RFC.  (Df. Br. at 12).

The ALJ determined that Walker could not perform past relevant work in Step Four of the five-step evaluation process.  Therefore, the ALJ moved to Step Five to determine if Walker could adjust to other work.  The ALJ relied on a VE to determine if Walker's limitations will prohibit Walker from performing other work in the national economy.  The ALJ has a duty to include all of Walker's limitations in the hypothetical to the VE, including Walker's moderate limitations in maintaining concentration, persistence, and pace.

Although not binding, this Court finds the Eleventh Circuit's decision in *Richter v. Astrue* helpful.  2010 WL 2017650 (May 21, 2010).  In *Richter*, the ALJ found that the Claimant suffered from psychological impairments that produced moderate difficulties in the ability to sustain concentration, persistence, or pace.  *Id.* at *1.  However, the ALJ's hypothetical to the VE did not explicitly include the Ricther's moderate limitation in maintaining concentration, persistence, and pace.  *Id.*  As a result, the ALJ ultimately found that the Richter had the ability to perform various unskilled jobs.  *Id.*  The Eleventh Circuit held that the ALJ's failure to include all of the Richter's impairments in the hypothetical amounts to reversible error because the hypothetical did not implicitly account for the Richter's deficiencies in concentration, persistence, and pace.  *Id.* at *4.

In the present case, the ALJ failed to incorporate Walker's moderate limitation in concentration, persistence, and pace into his hypothetical to the VE.  The ALJ limited Walker to unskilled work with only occasional contact with the public. Like the hypothetical from *Richter*, this hypothetical is inadequate.  It is unclear whether the ALJ intended these limitations to compensate for Walker's moderate limitations in concentration, persistence, and pace.  The ALJ relied on the VE's expert opinion when finding that Walker retained the RFC to perform work that existed in the national economy.  The VE's opnion, however, is unreliable because the VE based her opinion on an inadequate hypothetical from the ALJ.  Consequently, the ALJ's finding regarding Walker's ability to perform work that exists in sufficient numbers in the national economy is unsupported by substantial evidence.  On remand, it is crucial for the ALJ to include Walker's moderate limitations in maintaining concentration, persistence, and pace in his hypothetical to the VE.

**B.     Walker's alcohol abuse**

Walker claims the ALJ erred in finding his alcoholism contributed to his disability.  (Pl. Br. 12.)  According to Walker, no evidence supports a conclusion that Walker continued to drink after 2005 or that Walker's condition improved after he quit drinking.  (Pl. Br. 12).  Walker testified at the hearing before the ALJ that he stopped using alcohol in 2005 because he feared alcohol would kill him if he did not quit.  (Tr. 599).  The only evidence to support Walker's claim of abstention is a progress report from Dr. King noting that Walker told Dr. King he had quit drinking in May 2005.  (Tr. 497).  In the very same report, however, Dr. King notes a diagnosis of seizure disorder secondary to alcohol withdrawal.  (Tr. 497).  Walker is correct that the record is devoid of any evidence that he continued to abuse alcohol after 2005.  The record is also devoid of any objective evidence that he stopped drinking in 2005.  In *Pearson v. Astrue*, the Claimant made statements to medical personnel which established that the Claimant stopped drinking prior to his hearing before the ALJ. 271 Fed. Appx. 979, 982 (11th Cir. 2008) (unpublished).  The Eleventh Circuit found that a claimant bears the burden of proving that his substance abuse is no longer a contributing factor to the disability.  *Id.* Furthermore, the Eleventh Circuit found that the Claimant did not offer any evidence, other than his incredible testimony, to establish that he no longer abused alcohol.  *Id.* (citing *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001).  Likewise, Walker failed to offer any objective evidence, other than his statements to Dr. King, that he stopped abusing alcohol in 2005.

As the Commissioner points out, Walker's credibility regarding his abstention from alcohol is suspect.  Walker's statement regarding his alcohol use is inconsistent

13

throughout the record.  In January 2002, Walker claimed he quit drinking in 1988.  (Tr. 171).  In November 2002, Walker claimed he stopped using alcohol in January 2000 (Tr. 213), but Dr. King smelled alcohol on his breath in August and September 2002.  (Tr. 417, 402).  In January 2003, Walker claimed he stopped drinking six years prior; however, he smelled of alcohol and his friend stated that he continued to drink.  (Tr. 420). Again, in February 2005, Walker claimed he "cut back" in 1988 but failed a alcohol abuse test in November 2004. (Tr. 543).  Walker was hospitalized as late as 2005 with alcoholic pancreatitis.  (Tr. 469).  Each of these occasions further undermines Walker's claim that he quit drinking in May of 2005.  Walker has the burden to establish objective evidence of his sobriety.  Walker did not offer such evidence.  As a result, the ALJ was correct to conclude that Walker's long-term alcohol abuse contributed to his disability.

## VII. CONCLUSION

Pursuant to the findings of this Opinion, the Court concludes that the ALJ properly determined Walker's RFC, including Walker's moderate limitation in maintaining concentration, persistence, and pace.  Furthermore, the ALJ properly found Walker's alcohol abuse is a contributing factor in his disability.  However, the ALJ's finding that Walker retained the ability to perform unskilled work is unsupported by substantial evidence.  Therefore, it is ORDERED that the decision of the Commissioner is **REVERSED AND REMANDED** with instructions that the ALJ incorporate Walker's moderate limitation in maintaining concentration, persistence, and pace in his hypothetical to the Vocational Expert.

DONE this 21st day of October, 2010.


/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE